IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BROADCAST MUSIC, INC., *et al.*,    :
                                    :
               Plaintiff,           :    Case No. C2-06-482
                                    :
       v.                           :
                                    :
                                    :    JUDGE ALGENON L. MARBLEY
H.S.I., INC. d/b/a BUCKAROO'S,  *et al.*,  :    Magistrate Judge Kemp
                                    :
               Defendants.          :


<u>OPINION & ORDER</u>

## I.  INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Summary Judgment.  Plaintiffs

Broadcast Music, Inc. ("BMI") and various recording artists (collectively "Plaintiffs") brought a

suit for copyright infringement under the United States Copyright Act, 17 U.S.C. § 101, against

Defendants H.S.I. and Charles Capuano II ("HSI" and "Capuano" or collectively "Defendants").

Defendants owned and operated a bar, Buckaroo's, that allegedly featured the public

performance of copyrighted music without a license.  For the reasons stated below, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment, and **AWARDS** Plaintiffs **INJUNCTIVE**

relief, **$26,784** in **STATUTORY DAMAGES**, and **$8,192.40** in **ATTORNEYS FEES** and

**COSTS**.

## II.  BACKGROUND

BMI, a performance rights organization ("PRO"), serves as an intermediary between

copyright owners and those wishing to publicly perform copyrighted works.  Musical artists and

publishing companies copyright their music such that they alone may authorize the public

performance of their songs.  Copyright owners give PROs such as BMI the non-exclusive right to license the public performance of their music to concert halls, bars, restaurants, nightclubs, and hotels.  To achieve economies of scale, BMI has amassed over four-and-a-half million copyrighted songs in its repertoire.  BMI then licenses the right to perform all of the songs in its catalogue to venue owners and distributes the licensing fees to copyright owners.  In order to incentivize venue owners to purchase the right to play copyrighted music, BMI also litigates copyright infringement claims on behalf of the owners.

Defendants owned and operated the bar, Buckaroo's.  According to Plaintiffs, Buckaroo's regularly featured the public performance of copyrighted music without a license from BMI.  From March 28, 2002, to February 10, 2006, BMI sent Defendants over thirty-three letters both offering a license to play copyrighted songs and demanding that Buckaroo's cease copyright infringement.  Defendants never responded.  On March 30, 2004, BMI instructed Capuano to cease and desist public performances of BMI-licensed music at Buckaroo's.  On September 8, 2005, BMI investigator Barry Seidel ("Seidel") allegedly documented that Buckaroo's played thirteen BMI-licensed songs without permission.

Plaintiffs brought suit for copyright infringement in this Court on June 19, 2006, against HSI, the corporate shell of Buckaroo's, and Capuano, the owner and operator of the bar.  Plaintiffs submitted a request for admissions pursuant to Federal Rule of Civil Procedure 36(a) on March 14, 2007.  Defendants never responded.  Plaintiffs moved for summary judgment, requesting injunctive relief, $39,000 in statutory damages, and reasonable attorneys fees and costs.

### III.  STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the. . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 248. Therefore, the movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rest upon its mere allegations." Fed. R. Civ. P.56(e); *Celotex*, 477 U.S. at 324*; Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS
### A.  Liability

To prevail on an infringement claim for the public performance of copyrighted works, Plaintiffs must prove: "(1) the originality and authorship of a composition; (2) a valid copyright under the formalities of the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance." *Jobete Music Co., Inc. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077 (S.D. Ohio 2003); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Coles v. Wonder*, 283 F.3d 798 (6th Cir. 2002).

-3-

Plaintiffs own a valid and enforceable copyright to the songs at issue, and it is undisputed that Defendants never obtained a license.  Rather, Defendants contest liability on two grounds.  First, Defendants contend that Plaintiff failed to proffer sufficient evidence that Buckaroo's publicly performed BMI-licensed music.  Second, Capuano argues that vicarious liability for HSI's infringement is inappropriate.  Plaintiffs' counter that Defendants conceded liability as a result of their failure to respond to Plaintiffs' request for admissions.

### 1. Default Admissions

Under Federal Rule of Civil Procedure 36(a), "a matter is admitted unless . . . the party to whom the request is directed" answers the request for admissions.  Any fact "admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. 36(b).  The Court has the discretion to "permit withdrawal or amendment when the presentation of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."  Fed. R. Civ. P. 36(b).  Defendants did not respond to Plaintiffs' request for admissions.  Nor did Defendants petition the Court to withdraw or amend their admissions.  Accordingly, the Court deems that Defendants' default admissions conclusively establish the facts set forth in the requests.  *See* Fed. R. Civ. P. 36(b).  As such, Defendants concede that Buckaroo's publicly played thirteen copyrighted songs on September 8, 2005, without a license.

Defendants counter that a request for the admission of facts core to the litigation are beyond the scope of Rule 36.  *See Pickens v. Equitable Life Assur. Soc.*, 413 F.2d 1390, 1393-94 (5th Cir. 1969).  Defendants aver that it is "unrealistic to expect a litigant to admit away her

case; thus, a rule is unjustified if it presents an overwhelming incentive for improper denials."
Jack H. Friedenthal, Mary Kay Kane, Arthur R. Miller, *Civil Procedure* § 7.11 (3d ed. 1999).
Therefore,  Defendants argue that their failure to respond is not sufficient to establish the facts
contained in Plaintiffs' request for admissions.  As such, Defendants conclude that there is a
genuine issue of fact as to whether Buckaroo's played the copyrighted songs such that summary
judgment for Plaintiffs is inappropriate.

Procedurally, the Court need not even consider this argument on the merits because
Defendants have not moved to amend or withdraw their admissions.  A reply brief in opposition
to a Motion for Summary Judgment is an improper procedural tool by which to attack default
admissions.  The federal rules permit a responding party to seek relief from default admissions
on the ground of mistake or excusable neglect.  But the proper vehicle for such a petition is a
motion to withdraw or amend admissions under Rule 60(b).  As Defendants have argued neither
excusable neglect nor mistake, and have not moved to withdraw or amend their admissions under
Rule 60, the default admissions are binding.

Substantively, Defendants' argument is both anachronistic and flawed.  *Pickens* and its
progeny, upon which Defendants rely, arose prior to the 1970 amendment to Rule 36.  As
amended, the rule permits requests for admissions of facts core to the litigation, even going to
the underlying issue.  Fed. R. Civ. P. 36(a).[1]  Defendants' argument, that it is improper to put a

---

[1]Federal Rule of Civil Procedure 36(a) provides:

> A party who considers that a matter of which an admission has been
> requested presents a genuine issue for trial may not, on that ground alone,
> object to the request; the party may, subject to the provisions of Rule 37(c),
> deny the matter or set forth reasons why the party cannot admit or deny it.

responding party in the position of admitting or denying the underlying claims, ignores the basic purpose of discovery, which is to elicit facts central to the case. Otherwise, "a party could not be required to respond to other forms of discovery or to take the stand at trial." Friedenthal, Kane, & Miller, *supra*, § 7.11.

This Court has the discretion to rely on default admissions that resolve the underlying claims in granting summary judgment, especially considering Defendants have not moved to withdraw or amend their admissions. *See In re Huff*, 124 F.3d 197, (6th Cir. 1997); *Lovejoy v. Owens*, 86 F.3d 1156 (6th Cir. 1996); *Sibby v. Ownit Mortg. Solutions, Inc.*, No. 06-1472, 2007 WL 2015415, at *2 (6th Cir. July 6, 2007); *Price v. Total Bldg. Service, Inc.*, 100 F.3d 957 (6th Cir. 1996); *Heller Financial, Inc. v. Pandhi*, 888 F.2d 1391 (6th Cir. 1989); *Tracy v. Heffron*, 822 F.2d 60 (6th Cir. 1987). As such, HSI is liable for copyright infringement.

## 2. Vicarious Liability

Plaintiffs also brought a copyright infringement claim against Capuano as the owner and operator of Buckaroo's. Although "the Copyright Act does not expressly render anyone liable for infringement committed by another," it is axiomatic that a corporate officer is jointly and severally liable with his corporation for copyright infringement if he: "(1) has the right and ability to supervise the infringing activity, and (2) has a direct financial interest in such activities." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (*citing Sony Corp. v. Universal City Studios*, 464 U.S. 417, 434 (1984)). Capuano admitted that he had the right and ability to supervise the public performance of copyrighted music at Buckaroo's and that he had a direct financial interest in the activity. Accordingly, summary judgment for Plaintiffs is appropriate as there is no genuine issue of fact as to Capuano's

vicarious liability for copyright infringement at Buckaroo's.

## B. Damages

### 1. Injunctive Relief

Plaintiffs ask the Court to enjoin Defendants from further copyright infringement.  It is well established "that a showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction."  *Bridgeport Music, Inc. v. Justin Combs Pub.*, -- F.3d --, 2007 WL 3010525, at *16 (6th Cir. 2007) (citing Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06(B) (2007)).  Not "only is the issuance of a permanent injunction justified when a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction."  *Bridgeport Music*, 2007 WL 3010525, at *16 (citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (Fed. Cir.1990)).  Otherwise, awarding damages without injunctive relief would amount to a "to a forced license to use the creative work of another."  *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004).  Defendants concede that injunctive relief is appropriate in this case.  As such, the Court **ENJOINS** Defendants from playing Plaintiffs' copyrighted music without a license.

### 2. Statutory Damages

Plaintiffs demand $39,000 in statutory damages.  The Copyright Act permits Plaintiffs to seek statutory damages in lieu of actual damages attributable to the infringement.  17 U.S.C. § 504(b)-(c); *see also Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 578 (6th Cir. 2007).  Although statutory damages can range from $750 to $30,000 per infringement under the Copyright Act, the statute permits the Court to punish willful infringement with up to $150,000 per violation.  17 U.S.C. § 504(c)(1)-(2).  The Court has substantial discretion to set

statutory damages within the permitted range, but it is not without guidance. *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) (holding that "the employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion"). In calibrating statutory damages for copyright infringement, courts have looked to: (1) whether Defendants' infringement was willful, knowing, or innocent; (2) Defendants' profit from infringement; (3) Plaintiffs' loss from infringement; and (4) deterring future violations by Defendants and similarly situated entities. *See Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980).

i. <u>Willful Infringement</u>

The parties first dispute whether Defendants willfully infringed upon Plaintiffs' copyrights. In the context of copyright law:

> willfully means with knowledge that the defendants conduct constitutes copyright infringement. Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent. This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes."

*Princeton Univ. Press v. Michigan Document Serv.*, *Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (citing Nimmer & Nimmer, *supra*, § 14.04 (B)(3)).

This is a case of willful infringement. Beginning in early 2002, BMI mailed Defendants over thirty-three letters demanding that Buckaroo's obtain a license to play BMI's copyrighted music. Defendants demurred. BMI called Buckaroo's fifty-five times offering a license and warning Defendants against playing copyrighted songs. On March 30, 2004, BMI ordered

Defendants' to cease and desist public performances of BMI-licensed music at Buckaroo's. Defendants concede that they received these communications, and despite repeated warnings, violated Plaintiffs' statutory rights. As such, the Court holds that Defendants willfully infringed upon Plaintiffs' copyrights.

ii. <u>Method of Calculating Damages</u>

Parties also dispute the method by which the Court should calculate statutory damages. Plaintiffs suggest that the Court should award $3,000 for each violation, amounting to $39,000 in total damages. Defendants urge the Court to award between two and five times the unpaid annual licensing fee of $2,232, for a total of between $4,464 and $11,160 in damages. Plaintiffs method of calculating statutory damages, $3,000 per unlicensed song, is arbitrary, flawed, and inconsistent with the underlying purpose of the Copyright Act. Although the Court endorses Defendants' proposed method of calculating damages as a function of unpaid licensing fees, in application, Defendants undervalue the cost of their infringement.

Plaintiffs urge the Court to award $3,000 for each copyrighted song that Defendants admit to publicly playing on September 8, 2005. Plaintiffs contend that damages of $3,000 per song is an adequate deterrent to future infringement, is justified in light of Defendants' willful infringement, and is consistent with copyright jurisprudence. *See e.g., Sailor Music*, 867 F.Supp. at 570 (awarding statutory damages of $2,000 per song played at a nightclub without a license); *Jobete*, 285 F. Supp. 2d at 1092 (awarding $4,000 per violation); *Prater Music v. Williams*, 5 U.S.P.Q.2d 1813, 1816 (W.D. Mo. 1987) (awarding $3,000 per infringement). But the Court is not convinced that the song-by-song metric is an appropriate method of calculating statutory damages.

First, the number of technical infringements is an arbitrary proxy for damages because it bears little relation either to the harm to Plaintiffs' copyrights or to Buckaroo's benefit from playing copyrighted songs without a license. Rather, the number of unlicensed songs is a function of the tastes of Buckaroo's patrons and DJ on the night that BMI's investigator visited the bar. Buckaroo's did not benefit to the tune of $3,000 because its DJ played Hank Williams Jr. as opposed to Styx, for which BMI does not own the licensing rights. The number of violations is therefore a poor proxy for Plaintiff's loss or Buckaroo's gain. The number of technical infringements on any given night was arbitrary, and therefore, so is any calculation of statutory damages derived therefrom.

Second, the number of provable infringements is solely dependent on how long BMI is willing to pay an investigator to sit at the bar. BMI's investigator left the bar at 1:00 a.m., when Buckaroo's was still playing music. If he had stayed longer, it is likely that he would have documented more infringements. Since almost every copyrighted popular song in existence is subject to licensing by BMI or its sister organization ASCAP (American Society of Composers Authors and Publishers), if a BMI investigator had visited Buckaroo's for one week, he undoubtedly would have reported hundreds of violations. By Plaintiffs' metric, they would then be entitled to hundreds of thousands of dollars in statutory damages. Clearly, such an award would be a windfall. The practice of awarding damages according to the number of technical infringements is troubling precisely because it places damages at the mercy of Plaintiffs. Measuring damages by the number of infringements permits Plaintiffs to ramp-up the punishment arbitrarily, independent of the underlying harm.

Unpaid licensing fees "actually provide a superior yardstick than total infringements for

measuring appropriate statutory damages." *Broadcast Music, Inc. v. Star Amusements*, 44 F.3d 485, 488 (7th Cir. 1995). The monetary loss suffered by Plaintiffs is the unpaid registration fees, not the incremental harm from each unauthorized karoake performance of their work at Buckaroo's. The actual impact on the value of Plaintiffs' property right is *de minimis*. *Id*. But the lost licensing fees are not. Similarly, the benefit to Defendants is not the number of BMI-licensed songs that Buckaroo's played on any given night, but the $2,232 that Defendants saved each year by refusing to obtain a license.

Therefore, many courts have held that basing the award on some multiple of unpaid fees is more appropriate than measuring damages by the number of infringements. *Id*.; *see e.g., Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988) (awarding statutory damages of three times the unpaid licensing fees); *Broadcast Music, Inc., v. Xanthas, Inc.,* 855 F.2d 233 (5th Cir. 1988) (awarding three times the unpaid fees over four years); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) (awarding three times the licensing fees); *Morley Music Co. v. Café Continental, Inc.*, 777 F. Supp. 1579 (S.D. Fla. 1991) (awarding three times the licensing fees); *Rilting Music v. Speakeasy Enters., Inc.*, 706 F. Supp. 550, 557-58 (S.D. Ohio 1988) (award less than twice the licensing fees).

Defendants, however, suggest that the Court award no more than two to five times the annual licensing fee of $2,323. But this is insufficient. If the Copyright Act is "to have any effect, judgment against defendant must be appreciably more than the amount he would have had to expend to obtain appropriate permission." *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D. Va. 1985). Defendants "should be put on notice that it costs less to obey the copyright laws than to violate them." *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889,

892 (W.D. Pa. 1985).  Defendants were on notice for four years that the public performance of BMI-licensed music without permission constituted copyright infringement.  Nevertheless, Defendants refused to obtain a license, saving $8,928 in licensing fees over that period.  Therefore, statutory damages of three times the unpaid fees over four years properly accounts for Defendants' gain, Plaintiffs' loss, and the interest of the Copyright Act in deterring future violations.  As such, the Court **AWARDS** Plaintiffs **$26,784** in statutory damages.

### *3. Attorneys Fees*

Plaintiffs also seek reimbursement for reasonable attorneys fees and costs.  Pursuant to the Copyright Act, the Court has the discretion to award fees to the prevailing party.  17 U.S.C. § 505.  The Supreme Court has set forth a list of relevant factors: "frivolousness [of the suit], motivation [of the litigants], objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, (1994).  Defendants willfully infringed upon Plaintiffs statutory rights despite numerous warnings.  BMI sent Defendants thirty-three letters.  BMI called Defendants fifty-five times.  BMI offered Defendants a license to play its music and warned that public performance of its songs without permission infringed upon its property rights.  Because of Defendants' willful infringement of Plaintiffs' copyrights, the Court **AWARDS $7,594** attorneys fees and **$598.40** in costs to Plaintiffs.[2]

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED**.

---

[2]Attorneys fees are based on affidavit of Rebecca Jacobs, Plaintiffs' counsel.

Accordingly, the Court **ENJOINS** Defendants from further infringing upon Plaintiffs'
copyrights and awards Plaintiffs **$26,784** in **STATUTORY DAMAGES** and **$8,192.40** in
**ATTORNEYS FEES** and **COSTS**.  The total award is **$34,976.40**.  This disposes of all of
Plaintiffs' claims before the Court on this matter.

       **IT IS SO ORDERED.**


                  **    s/Algenon L. Marbley    **
                  **ALGENON L. MARBLEY**
                  **UNITED STATES DISTRICT COURT**


**Dated: November 26, 2007**